# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-3483
_____

United States of America

*Plaintiff - Appellee*

v.

Tyler Denby

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Nebraska
_____

Submitted: November 18, 2025
Filed: July 17, 2026
_____

Before BENTON, GRASZ, and STRAS, Circuit Judges.
_____

GRASZ, Circuit Judge.

Law enforcement in Alliance, Nebraska, stopped Tyler Denby after receiving a report that he had threatened a local resident. As Denby sat in his vehicle, an officer saw a marijuana pipe in his pocket, prompting a search of Denby's vehicle and person. In the vehicle, investigators discovered electronic devices, children's effects, and a collection of girls' underwear, so they obtained a search warrant for several SD cards found on Denby's person. They observed child pornography on

the SD cards, and Denby later confessed to possessing the child pornography and transporting it across state lines. At trial, a jury convicted Denby of transporting child pornography and possessing prepubescent child pornography, after which the district court[1] sentenced him to 262 months of imprisonment. Denby appeals, and we affirm.

## I. Background

Two Alliance Police Department officers, Officer Dani Campbell and Sergeant James Grumbles, began investigating a report from two callers that an individual armed with a knife had harassed them before driving off. Later that day, Box Butte County Sheriff Tammy Mowry was driving by a gas station in Alliance when someone waved her down to report that "he was in an altercation with an individual" who was "threatening him." Mowry relayed the incident to the Alliance Police Department before approaching the individual and identifying him as Denby. While waiting for Alliance officers to respond, she casually conversed with Denby as he sat in his car. Within a few minutes, Campbell and Grumbles arrived at the scene because they heard Denby's description over the radio and matched it with the one given by the two callers earlier in the day. At that point, Mowry asked for Denby's car keys, and he gave them to her. Campbell then noticed a marijuana pipe in Denby's pocket and decided to search his vehicle and person.

During the search, officers found cell phones, camcorders, flash drives, SD cards, a laptop, a teddy bear with a blonde hair on it, a child's bracelet, and a pillowcase containing a collection of stained children's panties and training bras. Upon finding the girls' underwear, Campbell read Denby his *Miranda* rights and inquired about the underwear. Denby responded that he had a panty fetish. Denby's mother later arrived, informed officers that Denby had a traumatic brain injury, and requested that they take him to the hospital for a mental evaluation. At the hospital,

---

[1]The Honorable Susan M. Bazis, United States District Judge for the District of Nebraska.

Denby behaved irrationally, referencing conspiracy theories, making lewd remarks, and exhibiting paranoia that his urine would be collected without his knowledge. In Denby's hospital records, staff noted that he was found with "items concerning for child abuse/pornography," and so no psychiatric facilities would take him due to "his pending child pornography allegation." Eventually, Alliance Investigator David LaDuke came to speak with Denby at the hospital. However, Denby told LaDuke, "I plead the Fifth," so LaDuke left.

Later that evening, LaDuke learned from an investigator in Montana that two 14-year-old girls had separately accused Denby of drugging and raping them in 2020. LaDuke then applied for a warrant to search Denby's electronic devices and storage media. In the warrant affidavit, LaDuke included the Montana rape allegations, stating that one 14-year-old "positively identified Denby as being the individual who had raped her" and the other "reported . . . that she had been drugged and raped by Denby." After obtaining the warrant, LaDuke discovered child pornography on several of Denby's SD cards.

Several months later, Denby submitted a request from jail to speak with Mowry, Grumbles, and LaDuke. LaDuke and Grumbles then visited Denby, who told them he wanted to work as a confidential informant. During the conversation, LaDuke Mirandized Denby and eventually asked him about his involvement with child pornography. Denby then gave a detailed confession in which he also claimed that he was obtaining child pornography "samples" so he could report the sellers to law enforcement. LaDuke later initiated a second interview to ask Denby if he transported child pornography across state lines. After being Mirandized again, Denby confessed.

Just before the pretrial motion deadline, Denby moved to suppress all the evidence found in his car and his confessions, but the district court denied the motion after a hearing. Fifteen months later, Denby moved to reopen the suppression

-3-

hearing based on newly acquired evidence, but a magistrate judge[2] denied that motion as untimely and futile. With trial on the horizon, Denby then moved in limine to exclude — among other things — evidence of the girls' underwear, his panty fetish, the teddy bear, the bracelet, and the Montana rape accusations. The district court denied his motion as to the underwear, but it excluded the other evidence. At trial, Denby also objected to evidence of the cell phones, camcorders, and laptop found in his car by cross-referencing his previous motions, but the district court overruled those objections. Following Denby's conviction, the district court sentenced him to the bottom of the Guidelines range, noting his mental health issues but finding that he failed to accept responsibility and was "at high risk to re-offend." Denby now appeals his conviction and sentence.

## II. Analysis

On appeal, Denby challenges (1) the district court's failure to evaluate, sua sponte, his competency to stand trial; (2) his counsels' failure to move for a competency evaluation; (3) the denial of his pretrial motion to suppress the evidence from his vehicle and his custodial statements; (4) the denial of his motion to reopen the suppression hearing; (5) the admission of certain evidence at trial; and (6) the substantive reasonableness of his sentence. These issues broadly revolve around four topics: Denby's competency, suppression motion, evidentiary objections, and sentence. We address each in turn.

### A. Competency

Denby first argues the district court should have ordered a competency evaluation for him on its own motion. We review the district court's "decision not to hold a competency hearing or order a competency evaluation for an abuse of discretion." *United States v. Luscombe*, 950 F.3d 1021, 1027 (8th Cir. 2020). Since

---

[2]The Honorable Jacqueline M. DeLuca, United States Magistrate Judge for the District of Nebraska.

convicting an incompetent person violates due process, a "defendant must be competent at all stages of [the] prosecution, including sentencing." *United States v. Casteel*, 717 F.3d 635, 640–41 (8th Cir. 2013) (quoting *United States v. Rickert,* 685 F.3d 760, 765 (8th Cir. 2012)). "A defendant is mentally incompetent to proceed with trial or sentencing 'if a preponderance of the evidence indicates that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.'" *United States v. Barraza*, 982 F.3d 1106, 1112–13 (8th Cir. 2020) (quoting *United States v. Whittington*, 586 F.3d 613, 618 (8th Cir. 2009)).

If "there is reasonable cause to believe" a defendant is incompetent, a district court must order a competency hearing on its own motion. 18 U.S.C. § 4241(a); *see also United States v. Turner*, 644 F.3d 713, 724–25 (8th Cir. 2011). To meet this obligation, "a district court should pay attention to any irrational behavior, the defendant's demeanor during trial, available medical evaluations, and whether trial counsel questioned the defendant's competency." *Turner*, 644 F.3d at 725. Depending on the totality of the circumstances, incoherent or delusional behavior may sometimes raise sufficient doubt about a defendant's competence — especially when the nature of such behavior is confirmed by a psychologist's opinion. *See, e.g.*, *Reynolds v. Norris*, 86 F.3d 796, 802 (8th Cir. 1996). But "mental illness and cognitive impairment are not synonymous with incompetence, . . . and a mental deficiency or bizarre, volatile, and irrational behavior does not necessarily make a defendant incompetent to stand trial." *United States v. Dahl*, 807 F.3d 900, 904 (8th Cir. 2015) (cleaned up); *see also, e.g.*, *Turner*, 644 F.3d at 725–26 (holding "bizarre or irrational" behavior not a sign of incompetence when schizophrenic defendant also remained polite, invoked Federal Rule of Evidence 615 at trial, used cross-examination beneficially, and tried to appeal to jurors' consciences).

Denby claims the district court had reasonable cause to doubt his competence because it knew that he had a traumatic brain injury; was previously suicidal; exhibited bizarre, paranoid behavior at the hospital; and was fixated on government corruption, conspiracy theories, and working undercover. We disagree. Despite his brain injury and bizarre behavior, Denby's coherent and rational participation in his

criminal proceedings evidenced his understanding of their nature and consequences. To start, Denby showed his understanding of the proceedings by mailing several pro se letters to the district court in which he demanded more discovery and contested the credibility of the evidence against him. He also mailed the district court a seven-page motion requesting a new attorney and detailing a litany of complaints about his previous attorneys' allegedly lackluster communication and failure to show him discovery materials.

Further, Denby had multiple, coherent conversations on the record throughout the proceedings. At a hearing on his motions in limine, Denby again expressed dissatisfaction with a previous attorney's communication regarding his motion to suppress. And he complained that he did not know he could testify at his suppression hearing until he learned about it by reading the law. Denby also engaged in two cogent discussions with the district court at trial. First, he spoke with the district court because he wanted his attorney to ask questions about his panty fetish despite his own successful motion in limine to exclude it. When the district court asked Denby if he wanted to open the door to this evidence, he reasoned that doing so would undercut the government's theory that the stained girls' underwear found in his car was previously worn by children. Second, he spoke with the district court about the possibility of testifying. Though Denby initially wanted to testify in hopes of getting the jury to forgive and acquit him despite his guilt, he decided against it after conferring with counsel.

This rational and coherent behavior during the proceedings did not provide reasonable cause to believe Denby was incompetent. His desire for more discovery shows he was aware of the nature of the proceedings. His directions to his counsel on what strategies to pursue and what questions to ask — along with his ability to learn the law — show he could assist in his defense. And his discussions with the district court show he was thinking strategically at trial by weighing the costs and benefits of asking certain questions or testifying in his own defense. As a result, the district court did not abuse its discretion by not ordering a competency evaluation.

Denby also argues his counsel was ineffective in failing to request a competency hearing for him. "We review claims of ineffective assistance of counsel on direct appeal only in exceptional cases" where "the relevant factual record has been fully developed, a failure to consider the claim on direct appeal would constitute a plain miscarriage of justice, or the alleged error of trial counsel is readily apparent." *United States v. Smart*, 60 F.4th 1084, 1097 (8th Cir. 2023) (cleaned up). Denby's ineffective-assistance claim is not exceptional: The district court has not passed on it; Denby may still raise it in a 28 U.S.C. § 2255 motion; and the alleged error is not readily apparent given our determination that no reasonable cause existed for the district court to believe Denby was incompetent. *See United States v. Oliver*, 950 F.3d 556, 566 (8th Cir. 2020).

## B. Suppression Motion

Denby next makes several arguments related to his motion to suppress, which the district court denied. "In evaluating the denial of a motion to suppress, we review the district court's legal conclusions de novo and factual findings for clear error." *United States v. Cardinale*, 147 F.4th 853, 857 (8th Cir. 2025) (quoting *United States v. Milk*, 66 F.4th 1121, 1130 (8th Cir. 2023)).

First, Denby contends the district court should have suppressed the evidence found in his vehicle because Sheriff Mowry stopped him without reasonable suspicion when she took his keys. We disagree. Reasonable suspicion to warrant an investigatory stop "arises when, based on the totality of the circumstances, the detaining officer had a particularized and objective basis for suspecting criminal wrongdoing." *District of Columbia v. R.W.*, 146 S. Ct. 1069, 1071 (2026) (cleaned up). Mowry stopped Denby after she was waved down by someone who told her that "he was in an altercation with" Denby and that Denby was "threatening him." This report gave Mowry a particularized and objective basis to suspect that Denby had violated Nebraska law. *See* Neb. Rev. Stat. §§ 28-310(1)(b), -311.01(1)(a) (criminalizing menacing or terroristic threats); *see also State v. Bryant*, 971 N.W.2d 146, 151–52 (Neb. 2022). Thus, no unlawful seizure occurred.

Second, Denby argues the district court should have suppressed his custodial statements because he did not validly waive his *Miranda* rights. A valid *Miranda* waiver must be "made voluntarily, knowingly and intelligently." *United States v. Pierson*, 73 F.4th 582, 590 (8th Cir. 2023) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). "A waiver is 'knowing and intelligent' where it is made with full awareness of both the nature of the right being abandoned and the consequences of abandoning the right." *Id.* (quoting *Thai v. Mapes*, 412 F.3d 970, 977 (8th Cir. 2005)). It is also "'voluntary' where the court can determine that the waiver was a product of the suspect's free and deliberate choice, and not the product of intimidation, coercion, or deception." *Id.* (quoting *Thai*, 412 F.3d at 977). Though Denby asserts he "was suffering from a severe mental illness and was suicidal," his *Miranda* waivers were valid.

For one, Denby does not dispute the district court's findings that he appeared coherent, unimpaired, articulate, and responsive during both of his interviews. More importantly, Denby demonstrated an understanding of his rights when he invoked them by telling LaDuke, "I plead the Fifth," on the day of his arrest after Campbell had Mirandized him. *See United States v. Makes Room For Them*, 49 F.3d 410, 415 (8th Cir. 1995) (implying invocation of *Miranda* rights shows an understanding of the rights). So when Denby stated he understood his rights in both interviews and then answered questions, he waived his rights knowingly and intelligently. Moreover, the district court found — and Denby does not dispute — that LaDuke and Grumbles conversed with Denby in a conversational and professional tone, making no promises or threats during either interview. Under these circumstances, Denby waived his rights voluntarily. *See Pierson*, 73 F.4th at 590.

Third, Denby challenges the denial of his untimely motion to reopen the suppression hearing. We review for abuse of discretion. *United States v. Harris*, 64 F.4th 999, 1003 (8th Cir. 2023). The standard applicable to a motion to reopen a suppression hearing "is not established in this circuit." *United States v. Laws*, 819 F.3d 388, 396 (8th Cir. 2016). Instead, we have repeatedly considered two standards in conjunction without choosing between them: (1) whether the movant can justify

the failure to present the new evidence earlier and (2) whether the new evidence would have changed the result of the hearing. *E.g.*, *id.*; *see also Harris*, 64 F.4th at 1003. But these standards also correlate, respectively, to the showings of cause and prejudice required when a movant files an untimely pretrial motion. *Compare Laws*, 819 F.3d at 396, *with United States v. Mayer*, 63 F.4th 680, 683 (8th Cir. 2023), *and* Fed. R. Crim. P. 12(c)(3). So when a motion to reopen a suppression hearing is untimely, the movant must meet both standards. *See Laws*, 819 F.3d at 396; *Mayer*, 63 F.4th at 683; *see also United States v. Pittman*, 816 F.3d 419, 424 (6th Cir. 2016) (treating motion to reopen suppression hearing as subject to pretrial motion deadline).

Denby has shown neither cause nor prejudice. Regarding cause, Denby moved to reopen the suppression hearing 15 months after the pretrial motion deadline based on newly acquired police reports from Yellowstone County, Montana, and hospital records from the day of his arrest. He now argues the delay was justified because he did not obtain the police reports sooner. But this argument does nothing to explain Denby's delay with respect to the hospital records. And information about the Montana rape investigations was placed into LaDuke's search-warrant affidavit filed the day of Denby's arrest. So Denby knew about the possible existence of the police reports before the suppression hearing, and he offers no argument as to why he failed to seek them before the hearing or for 15 months after it.

With respect to prejudice, Denby made two claims regarding the new evidence, but neither would have changed the outcome of the suppression hearing. Pointing to the Montana police reports, Denby first argued the reports contradicted LaDuke's search warrant affidavit; namely, its assertion that two minors in Montana had identified Denby as raping them. But according to the reports, both minors identified Denby by his name and Snapchat username and by describing his home and pets. So the reports did not contradict LaDuke's affidavit. As for his second claim, Denby supposed the police must have searched his electronics before LaDuke obtained a warrant because the hospital records mentioned "his pending child

pornography allegation." But Campbell and Grumbles came to suspect Denby of possessing child pornography at the scene of his arrest. Indeed, they voiced these suspicions shortly after finding the girls' underwear, camcorders, and children's effects in Denby's car. Given the untimeliness and futility of Denby's motion to reopen the suppression hearing, the magistrate judge did not abuse her discretion in denying it.

## C. Evidentiary Objections

Denby further contests the admission of certain evidence at trial. "We review the district court's admission of evidence for abuse of discretion," reversing only "when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict." *United States v. Azure*, 164 F.4th 688, 695 (8th Cir. 2026) (first quoting *United States v. Lamm*, 5 F.4th 942, 946 (8th Cir. 2021); and then quoting *United States v. Perez*, 61 F.4th 623, 626 (8th Cir. 2023)).

First, Denby argues the district court improperly admitted the girls' underwear found in his car because it was irrelevant to possessing child pornography and showed only his propensity to do so. Evidence of a "crime, wrong, or act," Fed. R. Evid. 404(b)(1), may be either intrinsic or extrinsic to the charged offense. *United States v. Vaca*, 38 F.4th 718, 720–21 (8th Cir. 2022). Such evidence "is generally admissible so long as it is intrinsic or being offered for a non-propensity purpose . . . ." *United States v. Grady*, 88 F.4th 1246, 1258 (8th Cir. 2023). In other words, extrinsic evidence cannot be admitted "solely to prove the defendant's propensity to commit criminal acts." *United States v. Marr*, 176 F.4th 1065, 1073 (8th Cir. 2026) (cleaned up); *see also* Fed. R. Evid. 404(b)(1)–(2). But it "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

Though the district court determined the underwear was admissible as either intrinsic or extrinsic evidence, it provided a Rule 404(b)(2) limiting instruction. So we need not consider whether the underwear was intrinsic because we conclude it was properly admitted under Rule 404(b)(2). Denby's possession of stained children's panties and training bras permits an inference that he derived sexual gratification from them. *See United States v. Bartunek*, 969 F.3d 860, 862–63 (8th Cir. 2020). This inference made the underwear "relevant to establish a motive for possessing child pornography," *United States v. Fechner*, 952 F.3d 954, 961 (8th Cir. 2020); *accord Bartunek*, 969 F.3d at 863, and to refute his claim to police that he was only collecting the files as "samples" with the hope of reporting the vendors to law enforcement. Because the underwear was relevant for non-propensity purposes, the district court did not abuse its discretion in admitting it.[3]

Second, Denby contends the district court should have excluded the cell phones, camcorders, and laptop found in his car as irrelevant. But Denby objected to this evidence at trial only by cross-referencing his previous motion to suppress and motions in limine. Even though he moved to suppress the electronic devices, Denby never objected in limine to their relevance. Accordingly, we review for plain error, which requires Denby to show an "(1) error, (2) that is plain, (3) that affects his substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Aguirre*, 170 F.4th 695, 700 (8th Cir. 2026) (cleaned up). We need not consider the merits of Denby's challenge because it cannot survive the third prong of plain error review, under which Denby must show "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *United States v. Simmons*, 70 F.4th 1086, 1091 (8th Cir. 2023) (quoting *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016)). The evidence against Denby — which included the sexually explicit

---

[3]Denby objected below that the underwear would be unduly prejudicial, *see* Fed. R. Evid. 403, but he did not brief this argument on appeal. So we consider it abandoned. *See Etheridge v. United States*, 241 F.3d 619, 622 (8th Cir. 2001) ("Claims not argued in the briefs are deemed abandoned on appeal.").

material found on his SD cards and his highly detailed confessions — was overwhelming. Excluding the electronic devices would not have changed the outcome of the trial, so the district court did not plainly err in admitting them.

## D. Sentence

Finally, Denby challenges the substantive reasonableness of his bottom-of-the-Guidelines sentence. We review for abuse of discretion and "presume a sentence within the advisory Guidelines range is substantively reasonable." *United States v. Hollow Horn Bear*, 144 F.4th 1105, 1110 (8th Cir. 2025). Denby claims the district court did not consider his brain injury or mental-health issues, but the record belies that allegation. And while Denby also disagrees with the weight placed on his failure to take responsibility, "disagreement with how the district court weighed the various sentencing factors, alone, is not enough to show an abuse of discretion." *United States v. Spratt*, 141 F.4th 931, 939 (8th Cir. 2025). As a result, Denby has not called into question the presumptive reasonableness of his sentence.

## III. Conclusion

We affirm the district court's judgment.

_____